## WILLIAM V. HUNTSMAN *vs.* JOHN F. NICHOLS.

Bristol.   Oct. 28, 1874. — Jan. 9, 1875.   COLT & AMES, JJ., absent.

The admission in rebuttal of evidence to corroborate the plaintiff's testimony in chief is within he discretion of the judge presiding at the trial, and affords the defendant no ground of exception.

On the issue whether an indorsement on a promissory note is genuine, evidence is competent that the alleged indorser had business transactions with the maker, and indorsed a note signed by him corresponding in date and amount to the note in suit.

On the issue whether an indorsement on a promissory note was genuine, the maker of the note testified that he had had business transactions with the defendant, who had indorsed notes for him, and, among others, one corresponding in date and amount to the note in suit; that these transactions were entered in his books of account which were in the possession of the defendant. *Held*, that if the defendant did not put the books in evidence, the plaintiff might comment on the omission in his argument to the jury.

The holder of a promissory note agreed with A., whom he sought to charge as indorser thereon, to submit the question of the genuineness of A.'s indorsement to referees, who decided that the indorsement was not genuine. The evidence was conflicting whether the parties intended their decision to be final. The judge, declining to instruct the jury, as requested by A., that the holder of the note was estopped by the decision of the referees to make any claim upon the note against him, instructed them that if the agreement was that if the referees decided the signature was not genuine, the plaintiff should take up the note and make no claim on A. for the amount, and the referees, so understanding it, and acting thereon, decided that the indorsement was not genuine, and the holder, after notice of their award, took up the note, relinquishing any claim against the defendant, they might consider the award as conclusive against the plaintiff's claim; but if the submission was not intended by the parties to be final, but was only to obtain their opinion whether the holder should pay and take up the note at maturity, but without relinquishing his claim against A., then the award, though evidence in the case, was not conclusive. *Held*, that these instructions were sufficiently favorable to A., and not open to exception by him.

The testimony of a referee, under an oral submission to arbitration, that "he had no idea the reference was final," is admissible in evidence as a statement that he had not rendered final judgment upon the rights of the parties.

CONTRACT upon a promissory note for $300 dated October 7, 1871, made by C. M. Fairbanks, payable to the defendant four months after date, and alleged to be indorsed by him to the plaintiff. The answer denied the making and indorsing of the note, and alleged that the plaintiff had agreed with the defendant to submit the case to referees, who decided that the alleged indorsement by the defendant was not genuine, and that the plaintiff was therefore estopped to prove the indorsement genuine.

Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff proved demand on the maker, and notice to the defendant, and put in evidence of the genuineness of the defendant's signature, and rested his case.

The defendant testified that the signature was not his, and called D. A. Chapin, cashier of the National Union Bank of Fall River, who testified that the plaintiff and the defendant submitted to himself and C. J. Holmes, cashier of the Second National Bank of Fall River, the question of the genuineness of the indorsement, and they decided it was not the defendant's indorsement, and he was of the same opinion still; he also pointed out the differences between the signature in question and admitted signatures of the defendant. This was substantially all the testimony introduced by the defendant on this point.

After the defendant had rested, the plaintiff was permitted to testify in rebuttal, against the objection of the defendant, that the signature in question was the defendant's genuine indorsement. The plaintiff also offered in rebuttal the deposition of C. M. Fairbanks, the maker of the note. Among the interrogatories proposed by the plaintiff to Fairbanks was the following : "If in the course of your business transactions with the defendant he indorsed notes for you, state what notes, giving the date and the amount of each note that he so indorsed." This was objected to at the time of filing and also at the trial; the defendant contending that it was incompetent and also not in rebuttal. The defendant having, upon cross-examination, admitted that he had had business transactions with Fairbanks, and had indorsed notes

for him, the judge overruled the objection, and permitted the interrogatory and answer to be read to the jury. The answer was as follows: " In answer to the previous question, he indorsed several notes for me." A list of the notes was annexed. Two of them were dated October 7, 1871, one for $300 at four months, the other for $382.01 at four months.

The plaintiff was also permitted at the same time to read the following interrogatory and answer thereto to the jury, the defendant having objected to the same at the time of filing and at the trial, contending that the same was not competent in rebuttal or in chief: " Did you have business transactions with the defendant, at or about the time he resided in Fall River, and if so, state fully what those transactions were, and in detail so far as you can?" " I have had business transactions with John F. Nichols during the entire time of my residence in Fall River after forming his acquaintance in June, 1871. The first transaction consisted in my asking Mr. John F. Nichols to indorse a note for me, which he. did; said note was for $300, dated July 1st, 1871, for four months. He afterwards indorsed several notes for me, for purposes which are fully explained in a set of books kept by me at my place of business, while in Fall River, said books being delivered to John F. Nichols when I left Fall River, and not since seen by witness, and he having no knowledge of their present whereabouts, except supposing them to be still in the possession of John F. Nichols."

The plaintiff was also permitted, against the objection of the defendant, to ask the defendant, whether the books of C. M. Fairbanks had not been and were not in his custody, and whether he had examined them; and was also allowed, against the objection of the defendant, to argue upon the fact that they had been in his possession and were not introduced in evidence, the judge having, upon the objection of the defendant, ruled that the entries in said books were not admissible when attempted to be introduced by the plaintiff, and having also directed the references in the deposition aforesaid to the books to be excluded.

The defendant testified that he and the plaintiff agreed to leave the question of the genuineness of the indorsement to Chapin and Holmes ; and if they decided it was his indorsement he was to pay the note, if not, that the plaintiff was to pay the

note, and that was to settle the matter; that the plaintiff chose Holmes, and he selected Chapin; that they went to Chapin, and said to him they had agreed to leave the genuineness of the indorsement to Holmes and himself; that Chapin told them he could not undertake to say absolutely that it was or was not defendant's signature, but could give his opinion, and was willing to do that if it would satisfy them; that the plaintiff said to Chapin, he did not want the defendant to pay the note if they came to the conclusion that it was not his signature, and the defendant said if it was thought by them to be his signature he would pay it; that after that they went to Holmes, and stated to him that they had come to leave the question of the indorsement to him and Chapin, and the defendant said to Holmes, in the presence of the plaintiff, that if they decided it was his signature he would pay the note. Chapin was called as a witness, and his testimony as to what took place between the plaintiff, defendant and himself, substantially agreed with the defendant's testimony as stated above. The plaintiff testified that the agreement was to leave to the referees the question of the genuineness of the indorsement so as to decide who should pay the note at the bank where it had been discounted, leaving to him the right of resort to the defendant, and denied that he said to Chapin that he did not want the defendant to pay the note if they decided it was not his signature; he admitted that Chapin and Holmes were to pass upon the genuineness of the indorsement, but only as aforesaid, and that Holmes was selected by him, and Chapin by the defendant. Holmes testified that the plaintiff and defendant came into his house, and the defendant asked him if he had agreed to sit on this matter, and he answered he had; that the plaintiff and the defendant then had some talk between themselves to which he paid no attention, and the defendant turned to him, and said that if they decided that the signature was his, he would pay the note; this was all the conversation. He was also permitted to testify, against the objection of the defendant, that he had no idea the reference was final; but stated on cross-examination that this was all the conversation he had with the plaintiff and the defendant, or with the defendant.

It appeared that the referees admitted in evidence genuine signatures of the defendant, and after comparing them with the

note in suit came to the conclusion that the indorsement in question was not the defendant's indorsement, and duly notified the parties of their decision.

Upon these facts, which were substantially all the testimony on this point, the defendant contended, and requested the judge to instruct the jury, that if they found that the plaintiff and defendant agreed to leave to Chapin and Holmes the question of the genuineness of the indorsement, and that if they decided that it was the defendant's indorsement, he was to pay the note, and not the plaintiff, and if they decided it was not the defendant's indorsement, the plaintiff was to pay the note, and not the defendant, and that was to settle the matter of liability ; then, inasmuch as the referees did decide that it was not the defendant's indorsement, the plaintiff is estopped to make any claim upon the note against the defendant, and is not entitled to recover. The judge declined to give the instruction prayed for ; and instructed the jury that if they found that the plaintiff and the defendant submitted the question of the genuineness of the indorsement to Chapin and Holmes, and if they decided the signature was genuine the defendant should pay and take up the note, but if they decided the signature was not genuine, the plaintiff should pay and take up the note, and make no claim on the defendant for the amount ; and that Chapin and Holmes understanding the submission as above stated, and both acting under it decided that it was not the genuine signature of the defendant, and communicated their decision as arbitrators to the parties, and that the plaintiff, in pursuance of their decision and award, performed it by paying and taking up the note, relinquishing any claim against the defendant, then they might consider the award as conclusive that the signature was not genuine, and the defendant not liable in this action ; but if the jury were not satisfied of this, but were satisfied only that there was a submission to Chapin and Holmes to ascertain their opinion whether the signature was genuine or not, that if they were of opinion it was genuine, the defendant should pay and take up the note, but if they were of opinion that it was not genuine, the plaintiff should pay and take up the note when it came to maturity, but without relinquishing his claim against the defendant as a prior indorser, then the parol submission and award, though evidence in the

case, was not conclusive and might be controlled by other evidence in the case.

The jury found for the plaintiff, and the defendant alleged exceptions.

*J. M. Morton, Jr.*, for the defendant.

*J. C. Blaisdell*, for the plaintiff.

DEVENS, J. Several exceptions have been taken to the rulings of the presiding judge, and the evidence admitted by him, which may be considered in their order.

1. The admission of evidence in rebuttal of the defendant's case, which should more properly have been offered by the plaintiff in chief, was clearly within the discretion of the court, and the exceptions do not show that it was not thus admitted. The point is too well settled to require the citation of authorities.

2. Although only the authenticity of the note in suit was in issue, yet the business transactions between Fairbanks and the defendant had some bearing upon the probability of the indorsement having actually been made by the defendant, who had testified that there had been such transactions, and that he had indorsed notes for Fairbanks ; and it was competent for the court to permit Fairbanks to state that, in the course of the transactions between himself and the defendant, several notes had been indorsed for him by the defendant, including among them one corresponding in date and amount with that in suit.

3. Fairbanks having stated that his business transactions, which included the giving of these various notes, were entered upon his books, the plaintiff was not permitted to prove what the entries therein were, but was rightly allowed to ask the defendant if these books were not in his possession, and if he had not examined them, and to argue upon his replies. If such books were in the possession of the defendant, it was competent for him to put them in evidence, if they tended to contradict the witness, and the fact that he did not do so was a proper subject of comment.

4. The question as to the authenticity of the signature of the defendant had been submitted to referees, but it was in dispute between the parties whether the decision of the referees was intended to settle and settled finally the liability of the defendant, so that there was no further claim upon him thereafter, or whether it settled only that the plaintiff should in the first

instance take up the note which was at a bank, not relinquishing thereby his remedy, if entitled to any, against the defendant whose name appeared as prior indorser.   The ruling of the court upon this point was sufficiently favorable to the defendant, as the parties might have submitted the question simply with a view of determining which of them should first take up the note, and in such case the plaintiff would have fully complied with the award by taking it up and relieving the defendant from any danger of suit by the bank at its maturity, while he still retained his own right to sue the defendant upon it.

Nor can it be successfully contended that even if the referees were ignorant that their decision was to be final, if the parties intended it to be so, it should now be so treated.   In order that the referees should have decided the matter with due regard to the rights of both parties, it was necessary for them to have understood the issue submitted to them.

5. The testimony of one of the referees that " he had no idea the reference was final " was a statement only that he had not understood that he had rendered any decision upon the question in controversy which finally determined the rights of the parties.
*Exceptions overruled.*