### FRIENCH SIMPSON ET AL. V. WELLS THOMPSON.

Decided. May 23, 1906.

**1.—Conflicting Testimony—Reading to Jury Irrelevant Pleadings.**

Where plaintiff's suit is founded upon charges of fraud in procuring a settlement of accounts, and certain other portions of his pleading which charged fraud and treachery in another and distinct transaction were stricken out by

the court, and the testimony upon the question of fraud in procuring the settlement was sharply conflicting, it was error to permit the plaintiff to read to the jury that portion of his pleading which had been stricken out.

**2.—Same—Irrelevant Testimony.**

Where the testimony is conflicting it is reversible error to permit a party to read to the jury portions of his pleading which had been stricken out on exception, and to testify concerning the facts alleged in said pleading, and for the court in its charge to call attention of the jury to such irrelevant transaction.

**3.—Authority of Bank to Apply Deposits.**

A bank has the right to apply the amount of dividends that come into its hands on the note of its debtor.

Appeal from the District Court of Colorado County. Tried below before Hon. Munford Kennon.

*McCormick & Brown* and *Brown & Lane,* for appellant.—Where, in a case tried before a jury, such as the one now under consideration, there was a sharp conflict in the testimony between the plaintiff on the one side and the two defendants, who are appellants, on the other, and where the jury were compelled to discredit the testimony of the two defendants in order to give plaintiff a verdict, and where plaintiff's pleadings, as in this case, contained allegations prejudicial to the character and business dealings of said defendants, it was error for the court below, after having sustained demurrers to said allegations, to permit plaintiff to read them to the jury. Rev. Stats., art. 1291; Rules for District Court, No. 26; Fort Worth and R. G. Ry. Co v. Lindsey, 32 S. W. Rep., 714.

Where a case, such as the one now under consideration, is being tried before a jury, and there is a sharp conflict in the testimony between the plaintiff on the one side and the two defendants, who are appellant, on the other side, upon the only question that was really at issue between the parties and upon which question alone the court submitted the case to the jury, and where the jury were compelled to discredit the testimony of the two defendants in order to give a verdict in favor of plaintiff, and where the plaintiff's pleadings, as in this case, contained allegations immaterial to the issue being tried, but highly prejudicial to the character and business dealings of the defendants, it was error, prejudicial to defendants, for the court, after having first sustained demurrers to such allegations, to afterwards, at the trial, permit plaintiff, over defendants' objection, to read such allegations to the jury; and the injury and hurt to defendants was intensified by permitting plaintiff, in his testimony, to testify about the matters set up in his pleadings to which defendants had demurred, and to testify before the jury that he had never received any benefit from the $17,300 notes, that they were procured from him by one of the defendants upon false representations, and the like, as set forth in the statement of facts and bills of exceptions. And that defendants were injured thereby is manifest in view of the action of the jury in returning a verdict against all three of the defendants, when there was no proof to sustain it as to one of them, Harbert, and to avoid

which plaintiff was compelled to remit the amount recovered against said Harbert.

The court having through erroneous rulings on pleadings and evidence brought about a verdict, improper and prejudicial to defendants, he should have sustained their motions for a new trial, and the verdict and judgment should have been vacated and set aside.

*Foard, Thompson & Townsend,* for appellee.—Where the parties make a settlement concerning a particular matter or transaction, it will not be implied that items of credit arising from other and distinct transactions are to be included in such settlement; and in order to hold that dividends arising from another and distinct source were included by authority of plaintiff in said settlement, it would be necessary to find that he actually knew of the existence and deposit of the dividends, and knowingly acquiesced in their appropriation as a credit, or that his failure to ascertain such fact was negligence. The charge was correct in presenting this view of the law.

There were pleadings and proof of such friendly and confidential relations between plaintiff and defendants as to require disclosure of the receipt and appropriation of the dividends to plaintiff, and the issue was properly submitted by the charge. Cockrill v. Cox, 65 Texas, 676; Railway Company v. O'Donnell, 58 Texas, 42; Insurance Co. v. Ice Co., 64 Texas, 583; International & G. N. Ry. Co. v. Leak, 64 Texas, 659; Harrell v. Houston, 66 Texas, 280; Weaver v. Nugent, 72 Texas, 278.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellee against Stephen Harbert and the Simpson Bank of Columbus, Texas, a co-partnership, alleged to consist of Carey Shaw and Friench Simpson, to recover certain dividends due him as stockholder in a corporation known as the "Colorado County Texas Land Association." It is alleged that Simpson was the president of the corporation and Harbert its treasurer; that Harbert and the bank had charge of the books of the corporation and refused appellee access to them and refused to render a statement of the condition of the affairs of the corporation; that Harbert had paid to the bank certain dividends due to appellee and that it then held the money. Appellants answered that appellee was indebted to the Simpson Bank in a large sum of money, and being sued for the same settled with the bank by conveying to it certain lands on which it had a deed of trust and giving his notes for $5,000. That at that settlement all sums paid into the bank for appellee by any one were included in a statement made as a basis for the settlement, and appellee had full credit for all such sums, among such sums being all the dividends paid into the bank by any one. The cause was tried by jury and resulted in a verdict for appellee for $1,344. On that verdict judgment was rendered against Carey Shaw and Friench Simpson, as individuals and as co-partners in the Simpson Bank, and against Stephen Harbert for $1,050, and against Shaw and Simpson individually and as partners in the Simpson Bank for $294. In other words, the judgment was against Shaw and Simpson for $1,344 and against Harbert for $1,050. Afterwards the judgment so far as Harbert was concerned was set aside, on motion of appellee, and he was dismissed from the suit.

Appellee filed a supplemental petition which contained special demurrers and much new matter. This new matter was excepted to by appellants and the court sustained exceptions to those parts of the petition "setting up any matter or matters extraneous to the issue on the question as to whether any dividends of the Colorado County Texas Land Association were paid over to the Simpson Bank, and as to whether or not said dividends were included in the settlement of accounts between the Simpson Bank and the plaintiff of date February, 1903." The ruling is not free from obscurity and leaves open the question as to what was or was not considered extraneous to the issue named, but it had reference to some parts of the petition, and it may be safe to include in the extraneous matter the allegations in the supplemental petition in regard to an oil mill enterprise which appellee states he was solicited to enter by Carey Shaw, which enterprise had no connection whatever with the matters involved in this suit. In those allegations, which were utterly foreign to the issues in this case, Shaw was charged with acting in bad faith with appellee, and with fraud and concealment as to the affairs of the enterprise. The court very properly sustained exceptions to the allegations, but over the objections of appellants allowed the pleadings, to which the exceptions had been sustained, to be read to the jury.

The record discloses an irreconcilable conflict between the testimony of appellee on the one side, and the testimony of Shaw and Simpson on the other. Appellee swore that he did not know that any dividends had been declared by the land association and Shaw, and Simpson swore that he did, and that he had attempted to draw the amount of the dividend for $1,050 out of the bank. Shaw stated that in 1898, appellee had demanded the dividend for $1,050 and that the former told the latter that it had been applied on his debt. With this state of case a small circumstance might turn the balance in favor of one party or the other, and it can not be ascertained how much influence the charges of bad faith and fraud upon the part of Shaw in regard to the oil mill enterprise may have had upon the minds of the jury. They may have taken the allegations as expressing the truth as to that transaction and could well argue that if appellants, or either of them, had acted in bad faith and violated the trust of a man who had placed the utmost confidence in them at one time, they did it in this instance. Fraud and deception had been charged in procuring the settlement of the matters pending between appellee and the Simpson Bank, and allegations as to the same conduct in another transaction might have had a strong influence in shaping the verdict of the jury. We can not say that it did not have that effect upon the jury, and in view of the conflicting evidence it may be reasonably assumed that it did affect the verdict. It is true that the objectionable pleadings were not read as evidence, but the jury would probably not draw that distinction. The court should have required appellee to replead, or at least have prevented him from reading the objectionable pleadings to the jury.

Under the facts there was but one issue in this case, and that was whether or not the dividend for $1,050 had been included in the settlement of February, 1903, and the one for $294 had afterwards been credited to appellee. How the indebtedness to the Simpson Bank was

brought about had nothing to do with the case. Appellee owed the bank, he does not deny that; he made a settlement of that indebtedness by the transfer of certain property to the bank and the execution of his note for $5,000. It made no difference whatever what the original consideration for the indebtedness was, and testimony in regard to transactions between the parties as to an oil mill enterprise was out of place. The court must have entertained this view of the matter when it sustained the exceptions to that part of the supplemental petition setting up the oil mill transaction, but afterwards not only permitted the obnoxious pleadings to be read to the jury, but actually permitted appellee to testify that his indebtedness of $17,300 to the bank grew out of the old Columbus Oil Mill transactions, and that he never "got a nickle in cash" for the notes he gave for the indebtedness; that the original notes, that formed the basis of the settlement of February, 1903, were given for what Shaw told him was his proportion of the losses. That testimony taken in connection with the pleadings, which were read to the jury, in which fraud and violated confidence were charged against appellants, undoubtedly had an injurious and improper influence with the jury. Not only did the court permit the pleadings and evidence, referred to, to go to the jury, but called the special attention of the jury to the oil mill transaction by charging that appellants had alleged in their answer that the dividends had been placed as credits on certain notes given by appellee to the bank, "which notes grew out of the dealings of the members of the bank and the plaintiff in regard to the purchase and operation of the oil mill." No such allegation appears in the answer of appellants, but the statement that it was therein, taken in connection with the allegations in the rejected pleadings and the evidence of appellee as to the oil mill transaction, must have impressed the jury unfavorably to appellants.

The eleventh and twelfth assignments of error are not well taken. There was no assumption of the fact that both or either of the dividends was or was not included in the settlement between appellants and appellee.

The original pleadings of appellee in this case amount to a bill for an accounting as to all dividends owing to appellee on certain stock in a land company, and for judgment against appellants for the amount of such dividends. In his supplemental petition appellee denied that the dividends entered into the settlement between the parties. The uncontradicted evidence showed that the dividend for $1,050 was included in the settlement, and that appellee had the advantage of it whether he knew it or not, and he does not prove that he was not indebted to appellants in the sum he agreed to pay in the settlement, but his sole contention is that he did not know that the dividend was included in the settlement, and if he had known that it was to enter therein he would not have settled. If the dividend for $1,050 was included in the settlement and appellee had the benefit of it, he can not again collect it and obtain a second benefit from it, although he may not have known of its inclusion in the settlement. The court recognized this principle in the third paragraph of his charge, but afterwards stated rules, which, although they were correct as general propositions, when not qualified were calculated to mislead the jury. For he informed the jury that matter

intended by both parties to enter into a contract bound both parties, and that if it was intended by one party to be included and the other party had reasonable opportunity to know that fact, and if such other would be deemed negligent in failing to ascertain the fact, that he would be bound, but otherwise he would not be bound. That proposition of law should have been qualified in this case by an instruction that in order to recover the burden rested upon appellee to rebut the case made by appellants and show that he had not been credited with the amount of his dividends for $1,050 in the settlement between him and appellants. This doctrine would obtain, although appellee had no opportunity offered to inspect the account books of appellants or statements made by them, because the duty devolved on appellee to rebut the case made by appellants and to show that they owed him for the dividends, and if he had in fact been credited with the dividends, he failed to establish any indebtedness by appellants to him. The matter of knowledge of appellee, as to the inclusion of the dividends or either of them in the settlement, could only be of importance in the event that it was shown that appellee was indebted to appellants in the sum he agreed to pay less the amount of the dividend for $1,050. Appellants pleaded and proved a settlement in which one of the dividends was included as a credit to appellee, and he could not recover unless he rebutted that proof by showing that he had not received the benefit of that credit.

One of the dividends, that for $294, was collected after the settlement between the parties, and if appellants credited it on the debt due by appellee to them, he could not recover it although it was not included in the settlement. It follows that if it was not credited to appellee that he is entitled to recover for that amount, but the evidence was uncontradicted that it was placed as a credit on appellee's debt to appellants. The Simpson Bank undoubtedly had the right to apply the amount of the dividend that came into its hands, on the debt due by appellee. (Zane, Banks and Banking, sec. 140.)

All the matters of importance have been considered. It follows that the judgment of the trial court should be reversed and the cause remanded for a trial on the lines indicated in this opinion.

*Reversed and remanded.*