BELL v. SWIM. (No. 783.) †

(Court of Civil Appeals of Texas. Amarillo. May 22, 1915. On Motion for Rehearing June 26, 1915.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⊛⟱295 — ACTION BY CREDITOR — INCONSISTENT FINDINGS.

The holder of a note signed by defendant's son brought suit against defendant as trustee of the son. The son being indebted to plaintiff and also other parties, including his father, assigned all his property to his father, including vendor's lien notes on a certain tract of land previously sold by the son. The purchaser of such tract, in consideration of a release, conveyed it on the son's request to the defendant. Special findings were made that this tract of land was deeded to

pay the son's debt, and was kept by defendant for the purpose of paying plaintiff's debt, and that defendant kept such land with the understanding that he would pay plaintiff's debt. *Held,* that such findings were not contradictory, and a judgment for plaintiff could be founded thereon.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 853–867; Dec. Dig. ⊛⟱295.]

2. LIMITATION OF ACTIONS ⊛⟱127 — AMENDMENTS—NEW OR DIFFERENT CAUSE OF ACTION.

In an action against defendant for the payment of his son's debt to plaintiff, the action was originally brought against both plaintiff and his son to seek a recovery of the son's note. The son having died, an amendment was filed, making his wife and children parties, but this amendment did not abandon the original cause of action against defendant on his assumption of plaintiff's debt. A subsequent amendment was made, wherein the assumption of debt was clearly alleged. *Held,* that plaintiff had not abandoned his cause of action on defendant's assumption of the debt, and consequently the action was not barred by the two-year statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. ⊛⟱ 127.]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⊛⟱295—ACTION BY CREDITOR—EVIDENCE.

In an action against defendant on the ground that he had assumed payment of his son's debt, evidence *held* to justify a finding that a certain tract of land was conveyed to defendant for the purpose of paying such debt and retained by him for that purpose.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 853–867; Dec. Dig. ⊛⟱295.]

4. TRIAL ⊛⟱253 — INSTRUCTIONS — INSTRUCTIONS DISREGARDING ISSUES.

In an action against defendant on the ground that he had assumed payment of his son's debt, and had received certain property for such purpose as trustee, an instruction that if the son directed the owner of the tract to convey it to his father for the purpose of paying off the son's indebtedness due the father, then no further questions need be answered was erroneous, since it would have eliminated the issue made by the pleadings, and evidence that defendant retained the land for the purpose of paying plaintiff's debt.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. ⊛⟱253.]

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⊛⟱295—ACTION BY CREDITOR—EVIDENCE.

In an action against defendant on the ground that he had assumed payment of his son's debt, evidence of direct promises by defendant to plaintiff to pay such a debt was relevant and admissible, as showing a subsequent assumption by defendant to pay such debt.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. §§ 853–867; Dec. Dig. ⊛⟱295.]

6. EVIDENCE ⊛⟱99—RELEVANCY—WHAT CONSTITUTES.

Evidence which conduces in any reasonable degree to establish the probability or improbability of the fact in controversy is relevant.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 123, 137–143; Dec. Dig. ⊛⟱99.]

---

⊛⟱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

On Motion for Rehearing.

**7. TRIAL ☞115—INSTRUCTIONS—PLEADINGS.**

In an action against defendant on the ground that he had assumed payment of his son's debt, it was not error to read to the jury parts of the petition setting out defendant's liability on the note sued on, based on alleged verbal promises to pay the same, although such allegations had been eliminated by special exceptions, where such parts were so interwoven with the remainder of the pleading as to require it to be read as a whole, or where the eliminated parts, though not in themselves stating a cause of action, were proper matter of inducement to the cause of action alleged.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 279–283, 295, 298; Dec. Dig. ☞115.]

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Action by S. E. Swim against H. A. Bell. From a judgment for plaintiff, defendant appeals. Affirmed.

Cecil Storey and L. P. Bonner, both of Vernon, and Turner & Rollins, of Amarillo, for appellant. Berry, Stokes & Morgan, of Vernon, for appellee.

HENDRICKS, J. The appellant, H. A. Bell, is the father of P. C. Bell, deceased, and the note creating the controversy between appellant and appellee was executed by the deceased, P. C. Bell, in favor of Swim, for the consideration of certain mules sold by the latter to said P. C. Bell. During the pendency of this obligation of P. C. Bell to Swim, the former transferred to his father, H. A. Bell, on January 28, 1909, all of his real estate, and practically all of his personal property, as an assignment, for the purpose of paying his debts. Prior to this assignment of P. C. Bell to H. A. Bell, for the purpose stated, the deceased, P. C. Bell, had conveyed a certain 200-acre tract of land, situated in Wilbarger county, Tex., to one Curtis, for which the latter executed to the former certain vendor lien notes, as part of the purchase money of said property, and these notes were embraced in the assignment by P. C. Bell to his father, H. A. Bell; and upon the 6th day of February, 1911, the said A. G. Curtis, being unable to pay for said land, executed a deed to H. A. Bell of said property, in consideration of the cancellation of the notes previously executed by him for the purchase price of the particular land, said land being designated in this record as the "Curtis tract."

As applicable to the particular issues upon which the cause was tried, the appellee, Swim, by a second amended petition, alleged that upon the 9th day of February, A. D. 1911, the defendant, H. A. Bell, and his son, P. C. Bell, had a settlement of their affairs, and at said time H. A. Bell reconveyed 535 acres out of 735 acres previously conveyed to him, and at the time of this settlement it was agreed between the father and son that H. A. Bell should retain the 200 acres of land conveyed to him by A. G. Curtis, for the purpose of paying the Swim note sued upon, and that the said H. A. Bell, at said time, verbally agreed to pay the note in consideration of his retention in said settlement of said 200 acres of land. It is also alleged by Swim that on the conveyance by Curtis to Bell of the 200 acres of land in consideration of the cancellation of the note as stated, it was agreed between H. A. Bell and P. C. Bell that the former would assume the payment of the note sued upon, or would use the property or the proceeds thereof in payment of the debt.

The trial court, among other issues, submitted the following four special issues to the jury, the first two having been submitted by him of his own motion, and the last two submitted at the request of the plaintiff, and reproduced with the answers thereto:

"1. Was the 200 acres, called the Curtis tract, deeded to H. A. Bell for the purpose of being used, or the proceeds of its sale being used, to pay off the Swim debt? Answer: This land was deeded to pay the P. C. Bell debts.

"2. Was the 200 acres, called the Curtis tract, kept by H. A. Bell after the settlement, testified about as having occurred on the 9th day of February, 1911, for the purpose of paying the Swim debt? Answer: Yes."

Issues submitted at the request of plaintiff:

"First. Did H. A. Bell keep the Curtis 200-acre tract of land in consideration that he would pay the Swim debt? Answer: Yes.

"Second. Did H. A. Bell keep or retain the Curtis 200-acre tract of land with the understanding that he would pay the Swim debt herein sued upon? Answer: Yes."

[1] The appellant assigns that the answers of the jury, in their special verdict to the first and second questions propounded by the court, and to the first and second questions submitted by the court upon plaintiff's request, are contradictory, and a proper judgment could not be based thereupon. The court rendered a judgment in favor of appellee against appellant, H. A. Bell, for the sum of $2,781.39, comprehending principal, interest, and attorney's fees. H. A. Bell conveyed the Curtis tract to one Reynolds upon the 16th day of February, 1912, in exchange for other real estate, which Reynolds at the direction of Bell, conveyed to his sons. A previous lien upon the Curtis tract leaves an equity in the property, based upon another finding of the jury, of the value of the land, at $16 an acre, considerably less than the amount of the debt and the judgment. Appellant argues that the issues submitted by the court of its own motion that the land was conveyed by Curtis to H. A. Bell for the purpose of using the same, or the proceeds of its sale, to the payment of plaintiff's debt, or was retained by Bell under the settlement with his son for the same purpose, are, in their nature, contradictory to the answers to plaintiff's interrogatories, to the

effect that Bell kept the land, as a part of the settlement, in consideration, or with the understanding, that he would pay the said debt. The logic is, if the first and second findings are true, the fourth and fifth cannot be true, and the judgment could have been only for the equity in the land, and not for the full amount of the debt. The alleged inconsistency is more apparent than real. We are unable to understand why a party could not make a conveyance to another in trust for the purpose of paying his debts, and the trustee assume the payment of the debts, or that the trustee, in consideration of a certain settlement between them, could not agree to retain the property for that purpose, and at the same time assume the payment of a debt, without being involved in the inconsistency as urged.

The evidence in this record suggests that when P. C. Bell directed Curtis, on account of the cancellation of the notes owing by the latter, to convey the land to his father, it was done with an understanding that the father would reconvey to his wife (P. C. Bell's) a portion of the land previously conveyed in the assignment, and also suggests that they were in the progress of a settlement of their affairs, and that H. A. Bell, two or three days after the execution of the deed by Curtis, gave the said P. C. Bell a final acquittance, or receipt, of obligations between them. There is no real contention in this record that the note upon which the suit is based was not a valid obligation of P. C. Bell; there is some testimony, from appellant's standpoint, that it was not regarded by P. C. Bell and wife as a proper obligation against the former, though the jury evidently considered that P. C. Bell had not repudiated it as a debt in his dealings with H. A. Bell. There is no issue joined, nor any evidence offered, upon an issue that P. C. Bell did not owe the debt. Bell received the mules for the note and sold the same, and the record suggests that before the assignment he used a major portion of the proceeds, and the father, after the assignment, used a considerable portion of the same, in payment of P. C. Bell's debts. Swim says that H. A. Bell told him, immediately after the general assignment to him, the purpose of the same, and that he would not reconvey to his son any of the property until his (Swim's) debt was paid, and promised him on his word of honor that he would pay the debt. H. A. Bell reconveyed a greater portion of the real estate to P. C. Bell's wife, and sold 200 acres to one Tombs, retaining the 200 acres conveyed by Curtis, and Swim claiming a repetition by H. A. Bell of his good intentions, with the testimony of Tombs and Martin suggesting the agreement between H. A. and P. C. Bell as to the purpose of the Curtis conveyance and the retention of the land in accordance with appellee's theory of recovery. Upon this consideration and the testimony hereinafter stated, we do not think the different findings are destructive of each other.

[2] Appellant also urges that, taking the previous petitions into consideration, filed by appellee, prior to the one upon which the trial was had, his special exceptions, presenting the two-year statute of limitations, should have been sustained; also that his special answer, alleging the same defense upon the facts, should have elicited from the court a judgment in his favor. We think the allegations and the evidence upon which the special findings are based are sufficient, as to trusteeship, to take the case out of the statute of limitations. If H. A. Bell received the Curtis tract for the purpose of using it to pay the debts of P. C. Bell, or if he retained the land in the final settlement with P. C. Bell for the same purpose, and assumed obligations owing by P. C. Bell, Swim was the beneficiary of the result of these negotiations, and H. A. Bell was the trustee, which, if true, was not ended within such time as that the statute of limitations would apply. "As between trustee and cestui que trust in the case of an express trust, the statute of limitation has no application, and no length of time is a bar. Against an express and continuing trust, time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the cestui." Perry on Trusts, vol. 2, § 863. See, also, Babcock v. Wyman, 19 How. 289, 15 L. Ed. 649; Bell County v. Felts, 122 S. W. 269; Gibbons v. Bell, 45 Tex. 417; Robertson v. Dubose, 76 Tex. 1, 13 S. W. 300. Of course in case of constructive trusts arising from fraud, which presuppose an adverse holding to the purposes of the trust from the beginning in the trustee, a different rule applies. See Barnet v. Houston, 18 Tex. Civ. App. 134, 44 S. W. 691, wherein C. J. James discusses to some extent this question as applied to trusts. If the trust exists to use the land, or its proceeds, upon the debt, and no time was stated, appellant would have a reasonable time, under the circumstances, to effectuate the trust. The assumption of the debt would necessarily follow the trust, being a part of the consideration creating the trust, and would not mature until this time expired, or until the trust, if it exists, was repudiated.

[3] Appellant assigns that the evidence is insufficient to show that the Curtis tract was conveyed to H. A. Bell for the purpose of paying the Swim debt, or retained by him for the same purpose, in consideration that he would pay plaintiff's debt. When the negotiations between the parties were pending, Martin testified that H. A. Bell told him that the Swim note would have to be satisfied out of the proceeds of the sale of the Curtis tract. H. A. Bell admits he afterwards tried to satisfy the Swim note with the equity exceeding the first lien in the Cur-

tis tract, and $200 to be paid to him by Swim in an amount equaling some fixed charges he claimed to have paid. There is testimony that the deed was not passed, or papers were not "swapped" (as Tombs expressed it), until the final settlement, the day the deed was made to Tombs, and the reconveyance by H. A. Bell to Mrs. P. C. Bell.

We have attempted to analyze this testimony searchingly, with the inferences deducible therefrom, and conclude that appellant's position is entirely untenable. The testimony of Tombs (while not wholly satisfactory) in connection with the testimony of Martin, and the consistent course of conduct upon the part of H. A. Bell (which he says was voluntary, but which the jury evidently rejected) to obtain the cancellation of this note and the settlement of same, induces the above conclusion.

[4] The appellant assigns that the trial court erred in refusing to submit the following requested special instruction:

"Did P. C. Bell direct A. G. Curtis to convey to H. A. Bell the 200-acre Curtis tract of land for the purpose of paying off the indebtedness due by P. C. Bell to H. A. Bell, if any? If you answer this question, Yes, then I instruct you that you answer no further questions propound-ed in this case."

This instruction, with an affirmative answer, would have eliminated entirely the following issue raised by the plaintiff's pleadings and testimony: Did H. A. Bell retain the land in his settlement with P. C. Bell for the purpose of using the same or its proceeds, in paying the Swim debt?

[5] The most serious question to us, in this case, is the complaint against the permission of the trial court of the reading to the jury of a portion of appellee's petition, alleging defendant's liability on the note sued upon, based upon certain alleged verbal promises, after the same had been eliminated from the case by special exceptions, and also the admission of the testimony of the plaintiff, Swim, over the objections of the defendant, as to the same promises, claimed by Swim to have been made directly to him by H. A. Bell, to pay said debt at different times. The issues were so drawn and the direct testimony of H. A. Bell, assisted by P. C. Bell's mother-in-law, is of such contradictory nature to the theory of the appellee, as to the trusteeship and the assumption of the debt by H. A. Bell, that the writer thinks that the admission of this testimony, especially if not relevant to the essential facts in litigation, was necessarily prejudicial and injurious. But was the testimony irrelevant? We admit the question is not free from considerable doubt and difficulty. And at this point we cite the case of Cathey v. Railway, 104 Tex. 39, 133 S. W. 418, 33 L. R. A. (N. S.) 103, by the Supreme Court, as a repudiation of the doctrine in Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507, contended for by appellee,

that if error has been committed in admitting testimony, the objector has waived the same by requiring the witness to repeat the same testimony on cross-examination.

The trial court, as noted by his qualification in the bill of exceptions referable to this testimony, partly permitted the same "as throwing light upon the reason for the settlement, and upon the probability of the parties, H. A. Bell and P. C. Bell, making such an agreement as that set out by plaintiff as the basis of his cause of action," which we believe to be the true justification of the testimony, if it exists. In other words: Is the testimony, suggesting a previous contractual relationship of H. A. Bell with Swim, based upon promises from the former to the latter directly to pay this debt, relevant as evidence of a subsequent assumption by H. A. Bell to P. C. Bell to pay the same debt? And as further relevant to the proposition whether the land was held by him in trust, with Swim as beneficiary, for the same purpose? There is no real issue in this cause, as stated, that P. C. Bell did not owe the debt to Swim. There is no dispute but what Bell conveyed all of his property to H. A. Bell for the purpose of paying all of his debts. There are numerous circumstances manifested by H. A. Bell of a significant character which indicate that at least he recognized the justness of the debt of P. C. Bell to Swim. It is undisputed that H. A. Bell used at least a part of the proceeds of the sale of the mules (the mules being the consideration for the note) in carrying out his contract as trustee, under the assignment, for P. C. Bell, in payment of his debts. There is testimony by an apparently disinterested witness of the statements of H. A. Bell to P. C. Bell in terms of strong recognition of the justness of this debt, and why it should be paid, when the last settlement was made.

We are unable to find any case directly bearing upon the particular point, and are guided, as best we can be, by general principles as to the relevancy of this testimony.

[6] Of course there must be some logical connection, either directly or by inference, between the fact offered and the fact to be proved, to make the former circumstance relevant to the latter.

"No precise and universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience. If the evidence offered conduces, in any reasonable degree, to establish the probability or improbability of the fact in controversy, it should go to the jury. The question as to its admission or rejection addresses itself to the court as one to be answered with a view to practical, rather than theoretical, considerations. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other certain or more probable." Jones Blue Book on Evidence, vol. 1, § 135, pp. 659, 660.

There probably could be no question but what antecedent contracts or promises are admissible for the purpose of proving subsequent contracts or promises with some logical connection of a similar nature between the same parties—not wholly analogous, of course, but bearing somewhat upon the question.

In the cause of Wood v. Finson, 91 Me. 280, 39 Atl. 1007, plaintiff sued the defendant for certain oil delivered on board a certain vessel in Boston, for shipment. The answer of the defendant was that plaintiff failed to insure the oil, and they lost its value on account of the oil having been lost at sea. The question at issue between the parties was whether, when the oil was sold, a contract was made that the vendor would insure the oil; affirmed by defendant and denied by the plaintiff. Defendant offered testimony as to other sales previously made by plaintiff, upon which insurance was placed by plaintiff for defendant's benefit, and the Supreme Court of Maine said:

" * * * While the fact of whether there had been insurance effected on previous sales, or not, might not be conclusive as to what was done in this particular instance, it was admissible on the question of probability or improbability of the contract being as claimed by plaintiff. It was in accordance with this principle that the court, in Trull v. True, 33 Me. 367, held that 'testimony cannot be excluded, as irrelevant which would have a tendency, however remote, to establish the probability or improbability of the fact in controversy.' "

The court further said:

"See, also, Tucker v. Peaslee, 36 N. H. 167, and Huntsman v. Nichols, 116 Mass. 521, where it was held (in the latter case) that, although the authenticity of the note in suit was the only issue, yet the business transactions between the parties had some bearing upon the probability of the indorsement having actually been made by the defendant, and were therefore admissible in evidence."

Justice Williams held, in the case of Kocher v. Mayberry, 15 Tex. Civ. App. 342, 39 S. W. 604, that where the evidence is conflicting as to the price fixed by contract for work and labor, evidence of the value of work and labor furnished is admissible for the consideration of the jury in resolving the conflict; followed by Justice Dunklin in the case of Carver v. Power State Bank, 164 S. W. 892.

It is true that the question of the relevancy of the testimony is whether it has any bearing upon the issue of the assumption of the particular debt by H. A. Bell, and whether he received the property, or retained the same, in trust for the purpose of using the same in payment of P. C. Bell's debt. H. A. Bell testified that in reality his agreement with P. C. Bell was that this property was to be conveyed to him, or retained by him, in payment of some $1,500 that P. C. Bell owed him in final settlement, and emphatically denying that he assumed to pay this particular debt. If, however, he were obligated to Swim at a different time, and made several promises directly to Swim to pay the same debt, we are inclined to think it would have some bearing, and, having reference to the same debt, it would have some logical connection with the proposition and issue that he obligated himself, and received the property, or retained the same, in his dealings with P. C. Bell, to pay the same debt. The relevancy of the testimony as bearing upon what H. A. Bell would do, or be inclined to do, or as to what he actually did in a settlement with P. C. Bell, may be cogent or remote as addressed to different minds, viewing the matter. We do not think the case of Simpson v. Thompson, 43 Tex. Civ. App. 273, 95 S. W. 94, cited by appellant, is in point, and we are inclined to think the testimony was admissible; and, there being no other assignments which we think are deserving of particular discussion, we find no error such as we think should reverse the case, and the judgment of the lower court is affirmed.

HALL, A. J., not sitting.

### On Motion for Rehearing.

HUFF, C. J. As suggested in the original opinion, the findings of the jury in answer to the special issues submitted to them are not inconsistent, especially so when considered in the light of the evidence. The facts in this case show that P. C. Bell, the son of appellant, was involved and, according to the testimony of his father, threatened with criminal prosecution. Appellant procured from his son, P. C. Bell, a transfer of 735 acres of land to himself, practically all of the personal property, notes, and accounts and vendors' lien notes against what is known as the Curtis land, for the sum of $3,000, which property was to be used in paying the son's indebtedness. Swim testified that he was informed by the parties that his son's debt to him was among those to be paid, and that the appellant personally gave him his word of honor the debt would be paid, and that he would pay it. It appears that Curtis did not pay the notes against the land, and, after being sued thereon, he, Curtis, by consent of the son, P. C. Bell, conveyed the land to H. A. Bell, February 6, 1911. It cannot well be disputed that by that transaction on that date the land was thereafter, until the settlement, held by H. A. Bell in trust to pay the debts under the terms of the original trust, and that the land occupied the position of the $3,000 vendors' lien notes. Thereafter, on the 9th of February, 1911, the father and son had a settlement. At this settlement the father deeded to the son's wife 535 acres of the land theretofore conveyed to him in trust, and it was agreed between them that the father should retain 400 acres of the land then owned by the son—200 acres of which was the Curtis tract. The evidence tends to show and warrants the finding that the 200 acres out of the 400 acres, which was sold to

Tombs, which sale on the date of the settlement was then being negotiated, and by which it was understood that appellant was to receive $6,000 net to him on this Tombs tract, that this sum was to be paid on debts, or to pay H. A. Bell for the debts that he had theretofore paid or become responsible for. The Swim note was not included in this Tombs sale. The consideration for the 200 acres of land which Tombs purchased was the payment of the debts, except the Swim debt, paid and to be paid by H. A. Bell. The 200-acre Curtis tract H. A. Bell agreed to keep as his property, and as consideration therefor agreed to pay the Swim debt. After this settlement and the deed from P. C. Bell and wife to H. A. Bell to the Tombs tract of land, appellant then deeded to Tombs that tract, receiving net thereon to him $6,000, which the evidence indicates he applied on the debts that he had theretofore assumed or paid, and to reimburse himself for whatever indebtedness his son was due him. The 200-acre Curtis tract appellant offered to Swim if he would pay a difference: One of his propositions was $800, another $500, and another $200. The propositions Swim testified he was unable to accept, for the reason that he was involved in other indebtedness, and was unable to pay that sum, whereupon Bell sold or exchanged the Curtis land to one Reynolds, and in that trade procured from Reynolds, as consideration for the Curtis land, lands in Culberson county. Appellant caused Reynolds to execute the deed to two other of his boys to this land.

The second question answered by the jury clearly responds to the facts. That is on February 9, 1911, the Curtis land was kept by appellant for the purpose of using it, or the proceeds, in paying the Swim debt. That was what he said he would do if Tombs' testimony is true, as well as other facts and circumstances in this case. The jury, on that issue, did not find he then kept the land in trust, as he had theretofore held it, for the purpose of paying the debt. Their first finding includes that purpose or proposition; that is, on February 6, 1911, the land was deeded in trust for the purpose of paying the debts of P. C. Bell, but on February 9, 1911, appellant kept it for the purpose of paying Swim's debt, in accordance with his agreement; and by the first special issue they found the payment of the Swim debt was the consideration for the land, and to the second issue they answered that it was the understanding that he should pay the Swim debt. The payment of the Swim debt was his "purpose," the "consideration" and "understanding" for keeping the 200-acre Curtis tract. These things are not inconsistent, but necessary to make a contract for the payment of the debt. The title by this agreed settlement was vested in H. A. Bell to the 200-acre tract. He had the right to sell and appropriate the proceeds, which he did by procuring other land and procuring a deed made to two of his boys. What was the consideration for vesting the title in H. A. Bell? The jury say it was the payment of the Swim debt. What was his purpose in procuring the title to himself? The jury say to pay the Swim debt, either with the land or out of its proceeds. What was the understanding, that is, between P. C. and H. A. Bell, in appellant keeping the land? The jury answered to pay the Swim debt. There cannot necessarily be any inconsistency in these findings.

On February 6, 1911, appellant had paid out sums of money for his son to prevent prosecution and to prevent the sale of the property. He had up to that date notes of Curtis to the amount of $3,000 to secure him in these sums, as well as Swim's note. He took the 200 acres in place of the notes, and thereby held it subject to the same trust the notes were held under. This was the finding of the jury in answer to the first issue. After that, on February 9, 1911, he and his son agreed to change the trust relationship. They, in other words, repudiated the trust for the first time. The father released 535 acres of land from the trust and became thereafter the payor or bound for the debts sought to be secured thereby. He did this by having his son convey to him the 200 acres which he afterwards conveyed to Tombs. This land he then knew would net him $6,000 and would pay all the debts except Swim's. The Curtis land, 200 acres, was sufficient to pay the Swim debt and something over, as he then evidently thought, for he demanded from Swim a difference between the debt and the land $800. This Swim says he was unable to pay, but offered to assume the mortgage on the land and give up his note, but appellant refused that, and traded it for other land. Appellant, simply as a part of the consideration paid for this land, assumed to pay the Swim debt, and by this assumption, on February 9, 1911, made it his debt and his promise to pay for a valuable consideration. On that day he turned a trust into an absolute conveyance for a valuable consideration; that is, the payment of a valid debt, which as trustee he had theretofore agreed to pay out of the funds in his hands, a part of which funds he then discharged from the trust by his agreement and a reconveyance to the wife of his son. The jury, in accordance with this situation, answered the two special issues, which do not conflict with the findings that when the Curtis deed was made it was in trust to pay the debts. No one had a right to complain at this settlement but cestui que trust, and, upon learning that appellant had assumed the payment of his note, he accepted the changed relation and accepted appellant as the principal obligor on the note. The only question in this case, and really the

only disputed fact, was whether, in the agreement and settlement of February 9, 1911, the consideration for the 200-acre Curtis tract was the payment of appellee Swim's note, or whether the consideration was to pay a balance claimed by appellant to be due him by his son after applying $6,000 and the proceeds from personal property and the rents collected by appellant while holding the property in trust. On this issue the jury found against appellant and we believe upon ample testimony.

It is true while testifying upon this trial appellant claimed his son owed him a balance of some $1,573, then due. The evidence, however, shows that on two different occasions after this settlement the appellant, by affidavit, stated that his son's indebtedness to him was only $6,000 and that this was paid by the Tombs tract of land. He made this to enable his son to procure a loan on the 535 acres of land. If the indebtedness to appellant had not been paid, then there was an equitable lien on the land, created by virtue of the trust theretofore executed and existing. On the date of the settlement he also gave his son a receipt, acknowledging the receipt of $10, which when settled, discharged all obligations by the son to his father. After this he sought to sell the land to Swim for the debt and $800 difference, showing that he considered that he owed the debt to Swim. That appellant claimed the absolute title to this 200 acres of land after the settlement is beyond question. He sold it as his and deeded it as his. His son, as far as this record shows, never claimed an interest in the land after the settlement; and, as above stated, there is no question on that point in this record. The only question is, What was the consideration moving from appellant to his son for the land? And the jury have settled that beyond cavil by finding that the consideration was the payment of the Swim debt.

One of the appellant's contentions is that the cause of action was barred by the two-year statute of limitations. The action was brought and suit instituted and filed originally October 26, 1912, against P. C. Bell and H. A. Bell, seeking a recovery on the note executed by P. C. Bell, and in the original petition it is averred that H. A. Bell, for a valuable consideration, in February, 1911, assumed the payment of the note and became liable therefor. After filing this suit P. C. Bell died, and thereupon an amendment was filed August 16, 1913, making his wife and children parties thereto. In this amendment, the assumption of the debt is not clearly alleged. The plea was defective in that particular, but clearly there was no abandonment of the original cause of action against H. A. Bell and his assumption of the debt. On September 19, 1913, an amendment was filed, upon which the parties went to trial. In this petition an entire history of the

transaction, from Swim's standpoint, was given, and a clear allegation is made that on the 9th day of February, 1911, H. A. Bell assumed to pay the note in consideration for the Curtis 200-acre tract of land. So that the two years have not expired between the 9th day of February, 1911, and October 26, 1912, when the suit was filed. The note fell due October 29, 1909, and four years from that date had not lapsed when the suit was filed. The note was not barred. Neither was the assumption of its payment by H. A. Bell barred when the suit was filed October, 26, 1912. The allegations of the several amendments do not materially differ in substance. The trial court could not say, and we cannot, in any of the pleadings that appellee abandoned the assumption on the part of Bell to pay the note; but it was averred and claimed in each and all as stated, and is so as to the first amendment. The plea was defective and required amendment, but that was not an abandonment of the cause of action on that ground. The discussion and proposition asserted in the original opinion on the statute of limitation we regard as sound and applicable to the particular facts of this case. Appellant took over all the property of his son, holding it in trust to pay his debts. Appellant, without consulting the beneficiaries in the trust, reconveyed part of this property, and, if Tombs' testimony is true, insisted that he should have the Curtis land to pay the Swim note, and upon that consideration alone procured the title. ·He had, in so far as Swim was concerned, without Swim's consent, repudiated the trust and induced his son and wife to give him the absolute title to the land in consideration that he pay the note. Afterwards he denied to Swim his liability, either as trustee or individually to Swim. After his conduct and representations, to both Swim and his son, and thereby causing delay in the institution of the suit, he should not be allowed to interpose the statute of limitations, because, first, he was trustee and held himself out to Swim and others as such. Thereafter, to get the title in his own name, he agreed with his son to pay the debt without notifying Swim to that effect, but afterwards denying all liability, either as trustee or as an individual. In order to defeat the statute of limitations if necessary, equity will fasten on him the character of trustee, and require him to comply with his agreement. The testimony of Swim, to the effect that appellant had verbally promised Swim in 1909 and subsequently to pay the note, giving his word of honor to do so, after stating he had in his hands his son's property for that purpose, we think was clearly admissible. It was part of this continuous transaction. It showed the relation of the parties, and a jury could not well have understood the case without it. It was material and relevant on the

question whether he was trustee for the purpose of paying the note sued on; it was also a circumstance showing why he assumed the payment of the note. Swim, by virtue of the trust, had the right as a lienholder in all the property turned over to appellant by his son. The evidence in this case indicates that appellant so understood, as is evidenced by his subsequent affidavits, in order that a mortgage could be given on the 535 acres of land reconveyed. He admits that the affidavit was made to release the land from the debts for which the trust was given to pay. He must have known he could not release the 535 acres from the lien without in some way satisfying the note in suit. Hence his statements to Swim were potent circumstances showing why, and the consideration for becoming personally responsible for the payment of the note, and his reasons therefor. The writer hereof has not the slightest hesitancy in holding this testimony material, relevant, and pertinent to the issues presented in this case.

[7] It is contended that the court erred in permitting paragraphs of the petition to which exceptions had been sustained read to the jury. There could have been no injury to appellant, such as will require a reversal in permitting the petition so to be read. If the matter was so interwoven with other matters as to require the reading of the entire pleading, it should have been permitted, especially so in the absence of a requirement of an amendment or a repleader eliminating the objectionable matter. The gravamen of the exception to the pleading was that it sought a recovery on a verbal promise to pay the debt more than two years before instituting the suit. If a recovery could not be had on such promises as the trial court held, we think it not improper to allege all the facts which led up to the cause of action declared on and submitted to the jury by the court. The explanation of the trial court to the bill of exception in this case clearly evidences the fact that such was the opinion of the trial judge. He held, as we gather from the bill of exception, that the promises first made as trustee by appellant would not constitute a cause of action against him personally, but did not hold that the facts stated therein were not proper to be alleged as part of the inducement to the cause of action thereinafter set up. We think, for the same reason given in sustaining the court in admitting the testimony of Swim as to the verbal promises, that the allegation giving the entire history and transaction of this case was not improper, but was altogether proper, and that no injury could have resulted to appellant thereby.

First, in answer to appellant's request for specific findings, we find the judgment is sustained upon the fact that for a valuable consideration, that is, the vesting of title in appellant in the 200 acres of land, appellant assumed to pay the debt of his son, P. C. Bell, to appellee; that appellee upon the finding of the jury was entitled to judgment for the full amount of the debt, interest, and attorney's fees; second, the jury having so found, the judgment should not have been rendered against appellant as trustee, but against him as the principal obligor on the debt such as was rendered by the trial court.

We believe that this case has been correctly disposed of, and the various assignments correctly overruled, and the motion for rehearing will therefore be overruled.

HALL, J., not sitting.