KILBORN v. JOHNSON et al.

(Court of Civil Appeals of Texas. San Antonio. March 4, 1914. Rehearing Denied April 1, 1914.)

1. VENDOR AND PURCHASER (§ 116*)—FAILURE OF TITLE—RESCISSION—BALANCING OF EQUITIES.

On rescission of a sale of land for failure of title, the rule that the vendor is entitled to a restoration of the land, without profits, and that the purchase money shall be returned to the vendee, without interest, does not apply where valuable improvements have been made by the vendee, nor where the sum paid is not in proportion to the value of the use of the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 205–208; Dec. Dig. § 116.*]

2. VENDOR AND PURCHASER (§ 351*)—CONTRACT—RESCISSION—BALANCING OF EQUITIES.

In March, 1908, plaintiff purchased certain gin property from defendants for $2,500, paying $500 cash, and agreeing to give four notes for the balance, one payable each year, with 8 per cent. interest. Plaintiff occupied a dwelling and storehouse on the premises and operated the gin until March, 1910, when, defendants having been unable to make title, the sale was rescinded. It appeared that the rental value of the gin for the period plaintiff used it was $500, that the dwelling house was worth $10 a month, and the store $15 a month. Held, that a decree finding that plaintiff was entitled to $580 for the cash payment and interest, and that defendants were entitled to a like sum for the use of the property, and balancing the one against the other, was proper.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1017, 1047–1058; Dec. Dig. § 351.*]

Appeal from Bexar County Court for Civil Cases; John H. Clark, Judge.

Action by L. B. Kilborn against B. F. Johnson, Sr., and others. Judgment for defendants, and plaintiff appeals. Affirmed.

W. W. Walling and Augustus McCloskey, both of San Antonio, for appellant. Geo. Powell, of San Antonio, for appellees.

CARL, J. About March 19, 1908, L. B. Kilborn, appellant, made a contract with B. F. Johnson, Sr., C. M. Thompson, Mrs. W. B. Adams, and Otis Cook, and the Lytle Gin Company, a partnership composed of the parties last named, whereby he agreed to buy a certain three acres of land, more or less, in Atascosa county, for a consideration of $2,500. He paid $500 in cash, and was to give four notes for $500 each, to be made to the Lytle Gin Company, and payable on or before November 1st each of the years 1908, 1909, 1910, and 1911, said notes to be executed when acceptable title and abstract were delivered to Kilborn. The contract further provided that, if appellees were unable to make good and sufficient title to said property within a reasonable time, the $500 cash payment, with interest thereon at 8 per cent. per annum from date of contract, was to be refunded. The notes were to be executed and delivered when acceptable deed and abstract were delivered by the gin company. The property consisted, as to improvements, of a dwelling house, store, gin equipped, etc. The gin was capable of an output of 18 to 20 bales of cotton per day, and Kilborn ran the gin through the seasons of 1908 and 1909, and ginned about 1,530 bales of cotton. He lived in the six-room house, and used the storehouse for conducting a general merchandise store; it being 25 by 65 feet in size. Kilborn made no demand, he says, for an abstract until he got up a trade for the property in September, 1909, at which time he was contemplating a sale to Britton Bros. Then all parties met, and Britton Bros. objected to the title. C. M. Thompson, for the gin company, said he could not then make a perfect title, but would give a bond for title. This Kilborn declined. Thompson told them there was some trouble about the title, and they were working on it. A few weeks later Kilborn says he notified the gin company he would wait no longer, and was holding the property subject to their order. He made no demand for abstract of title till the meeting in September, 1909, when he was trying to sell to Britton Bros. At the time of the contract C. M. Thompson told him it would take some time to perfect title, as there must be administration upon the estate of A. G. Cook, deceased, and letters of guardianship in the estate of J. F. Cook, deceased, so as to pass title from said estates. Thompson, for the company, offered Kilborn a deed and bond, which he refused. C. M. Thompson says he fully acquainted Kilborn with the difficulty of making the title at the time of the contract, that he offered him a deed and bond for title in September, 1909, which he refused, and a short while after that got the abstract in

shape and tendered same to Kilborn to examine, but he refused. He further proved the amount of cotton ginned as 1,530 bales, and that the average price therefor was $3 per bale, and that the net receipts or profits were $1 per bale; the expense not exceeding $2 per bale. He said they turned the property over to Kilborn in good condition, and that the use of the gin was worth $500 annually net, and that the dwelling house was worth $10 per month, and the storehouse $15 per month, and that he demanded rent, and Kilborn refused. He says, further, that after the meeting in September, 1909, Kilborn stayed there until March 19, 1910. B. F. Johnson, Sr., says that Kilborn understood the conditions of the title at the time he went into possession. The abstract was not tendered Kilborn until after he had moved off the property; but the abstract showed good title in Lytle Gin Company.

Appellant brought this suit to recover the $500 cash payment and interest, and appellees answered by general demurrer, special exceptions, and counterplea for the rental value of the property while appellant had it, and offered to deed the property and carry out the contract. The cause was tried before the court, who found that Kilborn was entitled to $580 for the cash payment and interest, but that appellees were also entitled to $580 for the use of the property. He therefore balanced one against the other, and adjudged the costs against Kilborn, who has appealed.

[1] The assignments of error raise the question that, inasmuch as this was a sale, and the title failed, appellant is not chargeable with rent. In short, that he can use a valuable property for two years and make a good margin of profit from it, then demand his cash payment back, and pay nothing for the use of the property, when appellees were doing what they could to carry out the contract in good faith. This is in the nature of an action for rescission, and, since it is such, appellant must himself do equity when he expects to receive it. The authorities cited by appellant do not apply to the facts of this case because, in an action to rescind an executory contract, the equities growing out of the transaction must be adjusted. This is ordinarily accomplished, where the purchase money has been paid, by permitting the vendee to receive his money back, without interest, and the vendor to receive his land back, without rents. This is upon the theory that the value of the use of the property will offset the use of the purchase money. The general rule is thus stated in Patrick v. Roach, 21 Tex. 255: "Where the purchase money is paid, and there has been no manifest injustice or fraud by either party, and the vendor is unable to make title, the rule is to restore the land to the vendor, without profits, and the purchase money to the vendee, without interest." This would not apply, however, to the case of valuable improvements made by the vendee, nor to a case like this, where the sum paid is not in proportion to the value of the use of the property.

[2] In McCarty v. Moorer, 50 Tex. 287, the vendor sued for the land as the holder of the superior title, and the vendee had paid part of the purchase money, and had made valuable improvements. Chief Justice Moore, speaking for the court, says: "The failure on the part of appellant to comply with the contract warranted appellees demanding the land; but it is equally clear that the court may deny them possession of it until they satisfy all the equities growing out of the contract in favor of appellant. This seems to have been the view, in part at least, taken of the case in the court below; but the judgment fails to carry it into effect. The court, we think, correctly held appellant entitled to pay for his improvements in excess of the value of the use of the land; but it erred in not so framing its judgment that it would not be a mere nominal recovery by appellant of the amount adjudged him."

Judge Stayton said, in State v. Snyder, 66 Tex. 698, 18 S. W. 109: "Cases arise in which the use and occupation of land sold under circumstances which justify rescission will equal in value the sum paid by the vendee, and in such cases it would not be necessary to tender or repay the purchase money so paid, and a court of equity would adjust the equities of the respective parties. Terrill v. De Witt, 20 Tex. 260; McCarty v. Moorer, 50 Tex. 287; Clay v. Hart, 49 Tex. 436. The petition alleges the annual rental value of the land, and claims other damages, all of which the plaintiff, so far as the pleadings show, is attempting to recover. It also alleges that the defendants have paid to the state certain money; but it does not appear that the sums claimed by the state are less than the sum of the moneys paid by the defendants. In view of this state of the pleadings, it does not appear that a case exists in which it would be necessary for the state, if the general rule stated be applicable to it, to offer to repay any part of the purchase money paid by the defendants; and the demurrer should have been overruled. The defendants, by their answer, might have set up their equities, if any they have, growing out of the transaction, with a view to the adjustment of the equities between the parties." Mr. Justice Stayton, in this case, quotes with approval from Mr. Pomeroy: "It may be regarded as a universal rule governing the court of equity in the administration of its remedies that, whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant growing out of, or intimately connected with, the subject of the controversy in question will be protected; and for this purpose the plaintiff will be required, as a condition to his obtaining the relief which he asks, to

·acknowledge, admit, provide for, secure, or allow whatever equitable rights, if any, the defendant may have, and to that end the court will, by its affirmative decree, award to the defendant whatever reliefs may be necessary in order to protect and enforce those rights." Pom. Eq. Jur. § 388.

In line with this view, we cite Moore v. ·Giesecke, 76 Tex. 543, 13 S. W. 290, and Moling v. Mahon, 86 S. W. 957. This last case is by Judge James, formerly of this court.

Under the authorities laid down, we think the trial court was clearly justified in adjusting the equities as was done; and the judgment is affirmed.