**BROOKE SMITH REALTY CO. v. GRAHAM.**
(No. 6691.) *

(Court of Civil Appeals of Texas. Austin.
Dec. 12, 1923.   Rehearing Denied
Jan. 16, 1924.)

1. **Landlord and tenant ⊙⟹231 (3)—Testimony as to increase in market rental value of building by reason of improvements held admissible to prove nature of contract entered into.**

In landlord's action for rent involving the issue of whether landlord had made improvements on tenant's agreement to pay increased rental, as claimed by landlord, or on agreement requiring tenant to reimburse landlord for amount of expenditures and entitling tenant to an interest in the property to the extent of the amount expended, as claimed by tenant, testimony that first improvements made increased the reasonable market rental value from $100 to $325 per month, and that additional improvements increased the rental value to $865 per month, and increased the value of the building from $40,000 to $70,000 per month, *held* admissible to assist the jury in determining whether or not landlord would be likely to make such a contract as that claimed to have been entered into by tenant.

2. **Frauds, statute of ⊙⟹138(2)—Court allowing purchaser amount paid on contract void under statute must offset reasonable value of use of building by purchaser.**

In landlord's action for rent involving the issue of whether landlord had made improvements on tenant's agreement to pay increased rental, as claimed by landlord or agreement requiring tenant to reimburse landlord for amount of expenditures and entitling tenant to an interest in the property to the extent of the amount expended, as claimed by tenant, it was court's duty, in holding contract claimed to have been entered into by tenant void under the statute of frauds and in crediting tenant with the amount paid under such contract, to offset against such amount the reasonable value of the use of the building after improvements were made, and not merely the rental paid by tenant prior to improvements.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Suit by the Brooke Smith Realty Company against William Graham, in which the defendant filed a cross-action. From the judgment rendered, plaintiff appeals. Reversed and remanded.

Wilkinson & McGaugh, of Brownwood, and C. H. Jenkins, of Austin, for appellant.

McCartney, Foster & McGee, of Brownwood, and Critz & Woodward, of Coleman, for appellee.

BAUGH, J.   Brooke Smith Realty Company, a corporation, sued William Graham for $13,840, claimed as 16 months' rent on a hotel building in Brownwood, owned by ap-

pellant, plaintiff below, and occupied and used by appellee as a hotel. Appellant claimed this as rent due from and after August 1, 1921.   There was also an item of $490, claimed as rents on a sample room, but this item was not disputed.   Appellant alleged that under an oral contract it rented said hotel to appellee in 1913, for an indefinite term, at $100 per month and table board for Brooke Smith; that about August, 1919, at the solicitation of appellee, and at a cost to it of $7,849.64, it improved, repaired, and modernized said hotel by adding gas, lavatories, baths, hot water, etc., in consideration of an increased rental of $225 per month in addition to the $100 per month then being paid; and that on and prior to August 1, 1920, at the solicitation of appellee and at a cost to it of $30,002.06, appellant added to said hotel a fourth story, consisting of 18 guest rooms, in consideration of a further added rental of $1 per day for each room, or $540 per month, making a total alleged agreed rental of $865 per month.   Appellant asked judgment for rents and foreclosure of a landlord's lien on the furniture and fixtures belonging to appellee in said hotel.

Appellee denied that he had ever agreed to pay more than the $100 per month and table board for Brooke Smith as rent for said hotel, and filed a cross-action in which he set up substantially the following: He admitted that the improvements and additions to the hotel were made as alleged by appellant, and did not controvert the cost of same, but alleged that same were made under agreements between him and appellant; that appellant, acting by and through Brooke Smith as its president, was to advance him, without interest, moneys necessary for that purpose; and that he was to repay to it from time to time such sums, or so much thereof as he could, under the express agreement that for all sums so repaid by him, over and above the $100 per month rent, he was to have and be entitled to that extent to an interest in said building.   He alleged payment to appellant, under the contracts set up by him, of $14,425 less $1,600 rents which he admits he owed appellant, and asked that his interest in said hotel be fixed to that extent; or, in the alternative, that he have judgment against appellant for all payments made by him in excess of $100 per month, with interest thereon, and that a lien be established and foreclosed against said hotel property.

Appellant specifically denied all allegations set up in appellee's cross-action, pleaded the statute of frauds, and asked that, in the event the court found appellee was entitled to recover such payments, then that appellant be allowed to offset against same the reasonable rental value of the premises.

The case was submitted to a jury on spe-

cial issues. The jury found that Graham never agreed to pay more than $100 per month and board for Brooke Smith as rent on the hotel; that appellant had agreed that Graham should have an interest in the building to the extent of all money repaid by him to appellant over and above the $100 per month; and that Graham had paid to appellant since January 1, 1920, the sum of $14,425. The court then found in favor of appellant on its plea of the statute of frauds. He also found that appellant was due a deduction of $4,240 for rentals due it, leaving a net balance of $10,035 as the amount appellee had paid appellant for an interest in the building. The court then rendered judgment that appellant take nothing; that appellee, on his cross-action, recover $10,035, together with $1,140.92 interest, or a total amount of $11,175, and costs of suit, and decreed the establishment and foreclosure of a lien against said hotel property. From this judgment Brooke Smith Realty Company appeals.

## Opinion.

Appellant offered testimony of a competent witness to show that the reasonable market rental value of said hotel after the improvements were made therein in 1919 was $325 per month; that its reasonable market rental value after the fourth story and elevator had been added in 1920 was $865 per month; that the reasonable market value of the hotel after the improvements of 1919 was $40,000; that its reasonable market value after the fourth story and elevator were added in 1920 was $70,000; that the aggregate amount, giving the various items, of the annual necessary expense to the owner of the hotel in insurance and taxes of various kinds was $1,762; and that the annual depreciation and necessary annual repairs of the entire building as remodeled would be approximately $1,200. All of this testimony was excluded as irrelevant and immaterial.

[1] We think all of this testimony should have been admitted. There was no dispute between the appellant and the appellee as to the extent and character of the improvements, nor the cost of same. It appears to be uncontroverted that all the improvements and additions to the building were made at the solicitation of appellee; that the appellant paid all the expenses thereof at the times same were made at an aggregate cost to it of $37,851.70; that the improvements of 1919 doubled the gross earning capacity of the hotel building to appellee; that the additions of 1920 increased the rooming capacity of the hotel by 60 per cent.; and that then its gross earning capacity, as compared with what appellee testified it was before any improvements at all were made, was more than trebled. Neither party denied the conversations nor transactions by which all of this was accomplished, but Brooke Smith testi-fied that as a consideration for all these things Graham agreed to pay him increased rents. Graham, on the other hand, testified that he never agreed to pay any rents except the original $100 per month, but that he was to repay appellant out of the profits he made from the hotel, whenever he could and as much as he could, and without interest, the cost of the improvements, and that for all over $100 per month paid by him subsequent to August 1, 1919, he was to become, to that extent, a joint owner of the property. Without detailing the evidence, it is only necessary to say that the testimony of Brooke Smith supported fully and in detail appellant's allegations and that of Graham supported fully and in detail the allegations made by him. Brooke Smith's testimony as to the contract was corroborated by that of his son, Brooke Smith, Jr., and Graham's testimony by that of his wife.

The material issue in the case thus became whether the transaction between appellant and appellee were in fact contracts of lease as asserted by Smith, or contracts of sale as asserted by Graham. On this issue the testimony of the parties was sharply and irreconcilably in conflict. That being true, the jury was entitled to any evidence which would conduce in any reasonable degree to establish the probability or improbability of the contention of either party. There was substantially no dispute as to what was actually done pursuant to the transaction between the parties, in the matter of the improvements made, their cost, the hotel's added earning capacity by reason of same, and the sums of money paid by Graham. The parties, so far as shown, were equally credible and both equally positive as to the contracts made. Evidence of any collateral fact which would reasonably aid the jury in determining which version of the transaction was the more probable or improbable, or whose testimony was the more reasonable or unreasonable, in the light of the surrounding circumstances, then became relevant and admissible. Dudley v. Strain (Tex. Civ. App.) 130 S. W. 782; Bell v. Swim (Tex. Civ. App.) 178 S. W. 853; 16 Cyc. 1118; 11 Enc. of Evid. 176, 196; 10 R. C. L. 927; 22 C. J. 167; Feichter v. Swift (Ind. App.) 132 N. E. 663; Standard Brewery v. Healy, 209 Ill. App. 271; Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554; Paine v. Argyle Mer. Co. (Tex. Civ. App.) 133 S. W. 895. And this is especially true where testimony on the main issue in the case is conflicting, as it was in the instant case. On what constitutes relevant evidence the following rule is laid down in Jones on Evidence (2d Ed.) §§ 138, 173:

"Where there is such logical connection between the fact offered as evidence, and the issuable fact, that proof of the former tends to make the latter more probable or improbable the testimony proposed is relevant, if not too remote. The competency of a collateral fact to

be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inference it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry or to assist, though remotely, to a determination probably founded on truth."

Applying these rules to the instant case it is clear that all of the proffered testimony should have been admitted. If the hotel had a reasonable market rental value, after it was improved in 1919, of $325 per month, and was reasonably worth $40,000, and a reasonable market rental value after the fourth story and elevator were added in 1920 of $865 per month, and was then reasonably worth $70,000, these facts would certainly render more reasonable the contention of appellant that it contracted for such rents, and more unreasonable and improbable the contention of appellee that the contract was for only $100 rental per month, and a right to acquire an indefinite interest in the building by repaying to appellant, without interest, and whenever appellee could, all or any portion of the $37,851.70 in cash spent by appellant in improving the property and adding to its rental value. If it cost appellant $2,962 in taxes, insurance, and upkeep to own the building as improved, appellee's contention would be preposterous that he rented it from a business man of 46 years' experience at $100 per month, when that same man offered to testify that, at the very times appellee said he made the contracts, he, as lessor, knew that the building had a rental market value of $325 per month and $865 per month, respectively, unless there was some consideration other than the rent inducing such a contract. The only additional consideration claimed by appellee was one which would yield appellant no additional revenue on its building, give it no definite assurance that any of the cost of the improvements and additions would ever be repaid, and which woud yield to appellant no return whatever on the $37,851.70 expended by appellant for the use and benefit of appellee. Clearly the testimony offered was admissible to give the jury sufficient information concerning the transaction to enable them to determine whether or not Brooke Smith would likely make such a contract. They were entitled to weigh all these matters in the light of everyday business experience to determine which contention of the parties was the more reasonable and more probably true. For, as Col. Wigmore, in discussing the application of the rule of relevancy to the admission of evidence, says: "The conclusions and tests of everyday experience must constantly control the standards of legal logic."

Counsel for appellee earnestly insists that appellant having declared on an express lease contract, and that appellee having denied the execution of any such contract, the reasonableness or unreasonableness of such a contract became immaterial. If that were the only issue in the case, appellee's position might be tenable. But, irrespective of the contract he pleaded, appellee never denied his status as a tenant of appellant, nor that the improvements and additions to the hotel were made at his instance, and largely for his benefit. And basing his cross-action upon the same transactions out of which the suit grew, appellee sought to recover an interest in the building, or, in the alternative, judgment for more than $10,000, paid by him under his alleged contract. There is practically no dispute as to what actually transpired, nor as to the sums of money paid, but the vital issue is: Under which agreement did the parties proceed—that asserted by appellant, or that asserted by appellee? Any testimony which, in the light of everyday business experience, would reasonably enable the jury to determine which contract was most reasonable and consequently most probably the one actually made, would become relevant, and the testimony excluded was as relevant—indeed, we think much more so—on the question of the reasonableness or unreasonableness, and the consequent probability or improbability, of the contract asserted by appellee, as on the contract asserted by appellant.

[2] The proffered testimony as to the reasonable market rental value of the hotel after the improvements and additions were made was clearly admissible on another ground. In its supplemental petition, appellant asked that, in the event the contract be found as alleged by appellee, appellant be allowed to offset against any amount recovered by appellee the reasonable value of the use of the building. The jury found in appellee's favor on his alleged contract that he was to have an interest in the building to the extent of the sums repaid by him over and above the $100 per month rent. The court sustained appellant's plea of the statute of frauds, and rendered judgment for what appellee had paid with interest, but allowed appellant only the $100 per month for the use of the building by appellee after the additions and improvements were made. The rule is well settled that, where a vendor pleads the statute of frauds, the vendee is entitled to recover the moneys paid by him on the purchase price of the property. 27 C. J. 358, 360; Wells v. Foreman (Tex. Civ. App.) 199 S. W. 1174; Burleson v. Tinnin (Tex. Civ. App.) 100 S. W. 350; Brown v. Randolph, 26 Tex. Civ. App. 66, 62 S. W. 981. It also seems equally well settled that where the vendee in an oral contract of sale seeks to recover the purchase money paid, with interest, where he had gone into possession of the property, he must account to the vendor for the benefits and advantages

derived from such possession. Chaney v. Coleman, 77 Tex. 100, 13 S. W. 850; Kilborn v. Johnson (Tex. Civ. App.) 164 S. W. 1108; 27 C. J. 368; De Montague v. Bacharach, 187 Mass. 128, 72 N. E.·938; May v. May (Ky.) 110 S. W. 808. Appellee's prayer in the alternative, in case the court found that the contract he alleged was unenforceable, was in the nature of a rescission, and it was the duty of the court to do equity and place the parties as nearly as possible in statu quo. The rule is well stated in Curtis v. Brannon, 98 Tenn. 153, 38 S. W. 1074, 69 L. R. A. 760, and quoted in appellant's brief, as follows:

"A vendee, having enjoyed the advantages of possession at the expense of his vendor, is bound, especially in a court of equity, to account for those advantages when he demands repayment of the purchase money with interest. He cannot, in such a case, hold benefits, and at the same time recover as if he had not received them. * * * In all matters of rescission, and in all relief akin to rescission, a court of equity will invariably put the parties as nearly in statu quo as possible."

The court should have admitted the testimony offered to ascertain what was the fair and reasonable value of the use of the premises after the improvements and additions were made, and should have deducted that value from the amount paid by appellee. Appellee insists that the court did allow a rental of $100 per month as a deduction. But this was not sufficient. It is undisputed that Graham had been paying $100 per month for the use of the property for several years before the improvements were made in 1919; that these improvements enabled him to double his gross revenue from the rooms; that the additions in 1920 increased the rooming capacity of the hotel 60 per cent., and his possible gross revenue more than 300 per cent. over what it was under his original rental contract. The cost of all this to appellant was $37,851.70. All this obviously increased materially the rental value of the property and the value of its use by appellee. The judgment as rendered does not take this increased rental value into consideration at all. It awards the appellee, Graham, the use of the hotel from August 1, 1919, with its doubled gross earning capacity up to August 1, 1920, and thereafter with such gross earning capacity more than trebled, up to December 4, 1922, the date of the trial, for the same rental which he·had been paying before any improvements were made. It also awards a recovery from appellant, with interest, of all sums paid' in excess of the original rental of $100 per month, and denies to appellant any return whatever during all this time on the $37,851.70 spent by it on the hotel, though Graham had during all this time profited by it. · It cannot be said that such a

judgment placed the parties in statu quo or did equity between them. If it be found upon another trial of this case that appellee is entitled to recover, as set up in his cross-action, the court should hear évidence as to what was the reasonable value to appellee of the use of the premises subsequent to August 1, 1919, and offset such value against the amounts paid to appellant by appellee. This should have been done in the trial, and the testimony offered was admissible on that ground.

This disposes of the first, secónd, third, sixth, and seventh propositions raised by appellant. By its fourth and fifth propositions appellant insists that the contract as alleged by appellee in his cross-action and as testified tó by him is void because lacking in mutuality of obligation and remedy, and also because it is so uncertain and indefinite in its terms that it is impossible 'for the court to determine the rights and liabilities of the parties. This presents a nice question, but under the view the court takes of the case its determination becomes immaterial. It is not disputed that the contract as alleged by appellee and found by the jury is unenforceable under the statute of frauds. If the agreement was made as alleged by Graham, and pursuant thereto he paid his money in good faith, he would be entitled in equity to recover it upon a proper accounting for the use of the premises, regardless of whether the agreement was void or only unenforceable. We think this question then becomes immaterial and render no opinion on same.

For the errors committed, the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.